## SHAW, State Auditor, v. GRUMBINE.

No. 20156. Opinion Filed March 12, 1929.

Rehearing Denied June 11, 1929.

Edwin Dabney, Atty. Gen., and Wm. L. Murphy, Asst. Atty. Gen., E. P. Hill, special counsel, for plaintiff in error.

Porter H. Morgan, for defendant in error.

SWINDALL, J. This action comes to this court by duly certified transcript from the district court of Oklahoma county, wherein Grant B. Grumbine was plaintiff and A. S. J. Shaw, as State Auditor, was defendant, and the parties for convenience in this appeal will be referred to as the plaintiff and defendant.

The questions for determination in this case are: Can the Legislature, during a session, by joint resolution or emergency law, authorize the employment and employ employees to serve at such session in any capacity, under section 49, article 5, of the Constitution, which declares that the Legislature shall not increase the number or emolument of its employees or the employees of either House, except by a general law, which shall not take effect during the term at which such increase is made, and can the Legislature employ employees, by joint resolution or emergency law enacted for that purpose, to assist the Senate sitting as a Court of Impeachment, and during the session at which the Senate sits as such court?

These propositions are presented to this court by the judgment roll in this case, consisting of the petition, answer, reply, motion for judgment on the pleadings, and judgment and decree of the court.

The plaintiff for his cause of action against the defendant alleged and stated, in substance: That the defendant is now, and since the 10th day of January, 1927, has been, the duly elected, qualified, and acting Auditor of the state of Oklahoma, and that under and by virtue of the official position the defendant holds and occupies it is his duty to prepare, audit, and draw vouchers or warrants in payment of salaries and emoluments to all employees employed by the House of Representatives and the State Senate, and that by virtue of the duties of his office he is required to prepare, draw, and audit only such warrants and vouchers for such employees as are legally and lawfully employed and for such amounts, as salaries and emoluments to such employees, as are by law allowed or authorized.

Plaintiff further alleges that on the 8th day of January, 1929, the Legislature of the state of Oklahoma duly assembled in regular session, and such Legislature is now in session, and that the members of the House of Representatives and the members of the State Senate have wrongfully and unlawfully and in violation of section 49, article 5, of the Constitution of the state of Oklahoma, attempted to increase the number of employees of each House and have attempted to increase the emoluments of the employees of each House, and that the members of the House of Representatives and the members of the State Senate have caused to be placed upon the pay roll various and sundry persons, agreeing to prepare and certify vouchers for such persons in amounts exceeding $6 per day and as high as $20 per day. That section 49 of article 5 of the Constitution reads:

"The Legislature shall not increase the number or emoluments of its employees, or the employees of either House, except by general law, which shall not take effect during the term at which such increase was made."

The plaintiff further alleges that the Legislature in 1915 passed an act which became effective on June 22, 1915, and which act was a general law and is now the sole and only law or authority for the number of employees, officers, positions, clerical and stenographic, that may be employed by either House of the Legislature, said act appearing as section 109, C. O. S. 1921. The plaintiff then sets out the employees authorized to be employed by said act and the compensation authorized to be paid each of said employees.

The plaintiff then alleges that he is a taxpayer, resident and citizen of Oklahoma county, state of Oklahoma, and that he has paid and is now paying taxes in support of the state government. That the defendant has audited, allowed, drawn, and certified to the Treasurer of the state of Oklahoma, warrants and vouchers issued in payment of claims for emoluments and salaries of persons claiming to hold offices and positions in either the House of Representatives or the Senate, and that the said defendant will continue to prepare, audit, and certify such vouchers and warrants to said persons un-

less this court issue an order restraining and enjoining the said defendant from preparing, drawing, or certifying, as State Auditor, such vouchers and forwarding the same to the State Treasurer for payment, and alleging that the plaintiff has no plain, speedy, and adequate remedy at law, and praying for an injunction.

This petition was duly verified and presented to the district court of Oklahoma county, and on the 1st day of February, 1929, the district court granted a temporary restraining order, restraining the defendant from paying employees of the legislative department of the government, except those designated in section 109, C. O. S. 1921. until the 5th day of February, 1929, which date was fixed by the court for a hearing upon said order.

On February 5, 1929, the defendant filed his answer. in which he admitted that the plaintiff was a taxpayer, as alleged, and that the defendant is the duly elected. qualified and acting Auditor of the state of Oklahoma, and admitted the employment of various and sundry persons as in the petition described, but specifically denies that said employment is illegal and contrary to law, but, on the contrary, alleges and states that such employment and payment of salaries therefor are specially authorized by House Joint Resolution No. 7 and Senate Joint Resolution No. 10, same being laws of the state of Oklahoma, and specifically authorizing each House of the Legislature to employ temporary help and assistance for the Twelfth Session of the Legislature. Defendant further says that the employment of such persons has been made under and by virtue of such acts and in strict conformity therewith and that such employment is in all things legal and valid. and defendant further alleges and states that the House of Representatives is now exercising its legislative. inquisitorial. and impeachment powers as by the Constitution provided. and that the Senate is now acting as part of the Legislature in regard to legislative matters and also sitting as a Court of Impeachment, as authorized by the Constitution. and that because of such manifold duties and work the employment of temporary help and assistance is an absolute necessity and without same neither House could perform or function as by law provided.

Further answering, defendant alleges and states that by House Resolution No. 5. the House authorized "The Committee of the House on Investigation of Executive. Judicial. Legislative and all Departments of State" to inquire into and investigate state officers and different departments and institutions of state government, for the purpose of presenting impeachment charges, and such committee was specifically authorized to hire and employ all such help and assistance that it deemed necessary for such work; a copy of said resolution being attached to defendant's answer and marked exhibit "I" for identification and made a part of said answer as if fully pleaded therein. That in the exercise of such powers the committee has employed temporarily various and sundry persons, such as process servers, investigators, attorneys, reporters, and stenographic and clerical assistance and that such employment is absolutely necessary, and is in all things legal and valid under the laws of the state of Oklahoma. If it is the intention of plaintiff to have the court inquire into and control the employment of these specific employees, this defendant respectfully suggests that this court is without jurisdiction in the premises on the ground and for the reason that such has been done by the committee as part of the investigation and impeachment proceedings authorized by the Constitution and its action in this regard is not subject to judicial review. Attached to said answer is a copy of House Resolution adopted by the House of Representatives of the state of Oklahoma on the 10th day of January, 1929.

To this answer a reply was filed, denying the allegations of the answer, and further alleging that the act of the Twelfth Legislature and the various resolutions pleaded and set up and relied upon by the said defendant are each and all unconstitutional and are, therefore, insufficient as the defense to the plaintiff's cause of action set out in his petition.

On February 12, 1929, the plaintiff filed his motion for judgment on the pleadings.

The transcript shows certain evidence taken which cannot be considered by this court on this appeal by duly certified transcript instead of case-made.

The trial court rendered judgment vacating the restraining order in so far as the same applied to the committee of the House on investigation of executive, judicial, legislative and all departments of state of the Twelfth Legislature, holding that said committee has full power and authority to hire and employ all necessary help and assistance that said committee may deem necessary and proper in the exercise of its duties under the Constitution and laws of the state of Oklahoma, and that as to said investigating committee the relief asked by plaintiff is expressly denied. The court further found and decreed that the House of Representatives of the Twelfth Session of the

Legislature has full power to employ and hire all necessary temporary help and assistance for the purpose of aiding and assisting the House in the exercise of its inquisitorial and impeachment powers, and in the doing of all work incidental thereto, and that the Senate of the Twelfth Session of the Legislature, and any regularly appointed committee, has full power and authority to employ and hire all necessary temporary help and assistance for the purpose of aiding and assisting the Senate and any such committee in the exercise of its or their powers and duties in regard to investigations, impeachments, and impeachment trials, and all work incidental thereto, and that the authority for such hiring is contained in House Resolution No. 5. House Joint Resolution No. 7, Senate Joint Resolution No. 10, and Senate Bill No. 5 of the Twelfth Session of the Legislature. To which findings and decree of the court, the plaintiff duly excepted and saved an exception, which was by the court allowed.

The court further ordered and decreed that because of section 49, article 5, of the Constitution, neither the House nor the Senate of the Twelfth Session of the Legislature has the power or authority to employ any temporary help or assistance to aid and assist either House in the exercise of its purely legislative powers, as employees for this purpose are provided for in section 109, C. O. S. 1921.

The court therefore ordered that the defendant, A. S. J. Shaw, as State Auditor, be, and he was by the trial court, enjoined from approving and passing any claims or issuing any warrants for any temporary help and assistance employed either by the House or the Senate to aid and assist either House in the exercise of its purely legislative power, to which part of the findings, order, and decree of the trial court the defendant duly excepted and saved his exceptions.

The case is presented to this court upon the petition in error of defendant and the cross-petition in error of plaintiff, in which it is alleged by each of said parties that the portions of the findings and decree adverse to them are contrary to law.

This action being brought to this court by a transcript of the record, this court will only consider the errors appearing in the judgment roll. The petition, the process, the return, the subsequent pleadings, orders, and judgment constitute the judgment roll. Errors which appear in the judgment roll may be brought to this court for review by transcript of the record properly certified to by the court clerk. Mitchell v. White, 106 Okla. 218, 233 Pac. 746.

A motion for judgment on the pleadings is in effect a general demurrer, under section 6067, Comp. Laws 1909. Cardin Bldg. Co. v. Smith, 125 Okla. 300, 258 P. 910. Board of County Commissioners v. Robertson, 35 Okla. 616, 130 Pac. 947.

On demurrer to an answer as defective, in that it does not state facts sufficient to constitute a defense, the pleading must be liberally construed, and all its allegations for the purposes of the demurrer taken as true. Smith-Wogan Hardware & Implement Co. v. Jos. W. Moon Buggy Co., 26 Okla. 161, 108 Pac. 1103.

The issue for us to determine in this case is: Does the answer state a defense to the plaintiff's petition? If so, the motion for judgment on the pleadings presented by the plaintiff admits the material allegations of the answer, and the order of the trial court modifying the restraining order, as to the additional or extra employees of the Legislature for investigation, inquisitorial, and impeachment purposes and impeachment trial, should be affirmed.

In arriving at a correct solution of this question we must remember that no one clause of the Constitution should be construed by itself and to the exclusion of other portions of the same instrument, but all portions of the Constitution relating to the same question should be construed together and, as far as possible, harmonized with each other. Leach v. State, 17 Okla. Cr. 322, 188 Pac. 118.

In considering a provision of a Constitution, the primary requirement is to ascertain the intention of the framers and of the people who adopted the same, and in such construction and determination technical rules should be disregarded and, as a rule, a mean between a strict and a liberal construction followed. State ex rel. Caldwell v. Hooker, County Judge, 22 Okla. 712, 98 Pac. 964.

A constitutional provision should receive a broader and more liberal construction than is applied to statutes.

Among other things which may be considered in determining the intent of the lawmakers is the evil which it is designed to remedy, and therefore this court properly looks at contemporaneous events, the situation as it exists, and as it was pressed upon the attention of the lawmakers. De Hasque v. A., T. & S. F. Ry. Co., 68 Okla. 183, 173 Pac. 73.

It is not to be presumed that a provision was inserted in the Constitution, or statute, without reason, or that a result was intended inconsistent with the judgment of men of common sense, guided by reason. Mitchell v. Lowden (Ill.) 123 N. E. 566.

As to legislative acts, it is only where the act of the Legislature is clearly, palpably, and plainly inconsistent with the terms and provisions of the Constitution that the courts will interfere and declare such act invalid and void. Munroe v. McNeill, 122 Okla. 297, 255 Pac. 150.

The universal rule is that the acts of the Legislature will not be held invalid unless they are clearly in conflict with some constitutional provision, and that all doubt, where there is a doubt, will be resolved in favor of the constitutionality of an act. State Board of Dental Examiners v. Pollock, 125 Okla. 170, 256 Pac. 927.

Every presumption will be indulged in favor of the constitutionality of a statute. This presumption is especially strong where the statute has long been acquiesced in, or where great injury would result from declaring it void. Reeves v. State (Okla. Cr.) 253 Pac. 510.

While we have set out in this opinion numerous expressions by learned jurists relative to statutory and constitutional construction, we are of the opinion that the clearest rule announced by the authorities is found in the case of Lake County Commissioners v. Rollins, 130 U. S. 662, 32 L. Ed. 1060, wherein that court says:

"The object of construction, applied to a Constitution, is to give effect to the intent of its framers, and of the people in adopting it. This intent is to be found in the instrument itself; and when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument.

"To get at the thought or meaning expressed in a statute, a contract or a Constitution, the first resort, in all cases, is to the natural signification of the words, in the order of grammatical arrangement in which the framers of the instrument have placed them. If the words convey a definite meaning, which involves no absurdity nor any contradiction of other parts of the instrument, then that meaning, apparent on the face of the instrument, must be accepted, and neither the courts nor the Legislature have the right to add to it or take from it."

These fundamental rules of constitutional and statutory construction, in our opinion, will not be questioned, and giving them the weight and consideration that we feel they are entitled to receive, was the district court of Oklahoma county authorized in modifying the temporary injunction so as to exclude from its operation extra employees of the legislative department employed by investigating committees or by the Legislature in exercising its investigating, inquisitorial, and impeachment powers, and was the district court of Oklahoma county correct in its ruling that the Legislature was prohibited by section 49 of article 5 of the Constitution from employing employees for the purposes of conducting the business of the Legislature as mainly a lawmaking body, other than such as were provided for by general law enacted prior to the term at which they were so employed?

We do not feel that it is proper to refer to the employees employed under House Joint Resolution No. 7, and Senate Joint Resolution No. 10, passed by the Twelfth Session of the Legislature, as temporary employees, as, strictly speaking, such employees are not temporary employees, as that word is usually used, for the reason that under the law they might be employed as long, or for a longer period of time than the other employees of the Legislature. It appears to us that it was the intent of the framers of the Constitution, and the people in adopting the same, that the inhibition of section 49 of article 5 should relate to employees of the Legislature employed at its own volition, and not such as they were or may be required to employ in order to carry in force some other section of the Constitution.

There is also a strong reason for holding that this section was not intended to apply to the Legislature acting in its investigating and inquisitorial capacity, or the Senate sitting as a Court of Impeachment, for the reason that the law presumes the validity and regularity of the official acts of public officers within the line of their official duties, and the framers of the Constitution, and the people in adopting it, evidently did so with the thought in mind that the public officers elected by them would discharge their official duties, and if so, then it would not become necessary for the Legislature to investigate or provide funds to impeach such officers, or to employ necessary help to serve the Legislature in its inquisitorial and investigating capacity, or the Senate sitting as a Court of Impeachment.

We are of the opinion that the Legislature, acting in an inquisitorial and investigating capacity, or either House in performing such duties, or the Senate sitting as a Court of Impeachment, is vested with authority to employ such clerks, stenographers,

or other employees as may be necessary to discharge such duties, and that the inhibition of section 49, article 5, of the Constitution was intended by the framers, and the people in adopting the Constitution, that it should apply to the Legislature as a law-making body, and does not prohibit the Legislature, sitting in an inquisitorial and investigating capacity, from employing additional employees to enable it to properly function and discharge its duties in such capacities.

We therefore hold that such additional or extra help does not come within the inhibition of section 49 of article 5 of the Constitution.

We further hold that it is for the legislative and not the judicial department of the state government to determine and declare whether or not an emergency exists by reason whereof it is necessary to employ additional clerks, stenographers, process servers, and other employees necessary to serve the Legislature while functioning in its investigating and inquisitorial capacity, and for the Senate sitting as a Court of Impeachment.

Having arrived at the conclusion that the inhibition of section 49 of article 5 of the Constitution does not apply to the Legislature while acting in its inquisitorial and investigating capacity, and the Senate sitting as a Court of Impeachment, does the answer in this case state any facts sufficient to constitute a defense to the plaintiff's petition?

The petition alleges that at the time of the commencement of this action, section 109, C. O. S. 1921, passed by the Legislature in 1915, was the sole and only law or authority for the number of employees, officers, clerical and stenographic, that may be employed by either House of the Legislature. The answer avers and states that the House of Representatives is now exercising its legislative, inquisitorial and impeachment powers. as by the Constitution provided, and that the Senate is now acting as a part of the Legislature in regard to legislative matters, and also sitting as a Court of Impeachment, as authorized by the Constitution, and because of such manifold duties and work, the employment of temporary help and assistance is absolutely necessary. It then pleads House Resolution No. 5, and alleges that under said resolution the House has employed process servers and other assistance.

As far as the employees of the House of Representatives are concerned, we agree with counsel for plaintiff that section 109

of C. O. S. 1921, is the only law in force authorizing the House of Representatives to employ clerks, stenographers, or other employees for carrying on the business of the House, acting as a Legislature, or in its investigating and inquisitorial capacity, but we cannot agree that it is the only law in force relating to the Senate, sitting as a Court of Impeachment. Section 156 of article 2, chapter 2, C. O. S. 1921, provides that when articles of impeachment shall be presented to the Senate, the Senate shall within ten days thereafter organize as a Court of Impeachment, and may, for the purpose of conducting the business of such court, appoint a clerk, who may be the Secretary of the Senate. The clerk shall issue all process and keep a record of the proceedings of such court. The said court shall also appoint a marshal, and an assistant marshal, who shall be its executive officers. It may also employ such stenographic, clerical, and other help as may be required. This section authorizes the employment of certain help. but does not provide for the number of stenographers, clerks, and other help that may be required, and leaves it to future action of the Legislature to fix the number of stenographers, clerical and other help as may be required by the Senate, sitting as a Court of Impeachment, and also to fix the compensation of such employees and to make an appropriation to pay the salaries of such employees.

Section 158, C. O. S. 1921, provides that all process shall be served or executed by the marshal or his assistant. or by any sheriff or deputy in the several counties of the state.

And section 160 provides that witnesses attending before said court shall have the same compensation for travel and attendance, and the same exemptions in going, remaining, and returning, as witnesses in the district court; and officers executing the process and orders of the Senate, when sitting as a Court of Impeachment, shall have the same fees as are allowed sheriffs for like services in the district court. So it will be seen that there was, at the time of the commencement of this action, a law in force providing for witness fees, and the compensation of the marshal of the Court of Impeachment, or his assistant, and for process servers or sheriffs in serving process, the same fees as are allowed witnesses in the district court and sheriffs for serving process in the district court. There is also provision made for certain employees of the Senate, sitting as a Court of Impeachment, when it holds its sessions after the

Legislature has adjourned, and fixing the amount of their compensation, but not the number. But there is no law in force fixing the number or amount of compensation of employees of the House, other than its general employees, provided for by section 109, C. O. S. 1921, and before the Auditor can legally pay said extra employees, it will be necessary for some law to be enacted by the Legislature fixing the number of said extra employees and their compensation, and also to make an appropriation for the payment of such extra employees, and the same must be provided for in separate bills, embracing but one subject, and until that is done, the Auditor would have no authority to pay such employees.

It is claimed by plaintiff that the Legislature has employed extra help at a higher wage than is provided for by section 109, supra, but we find no law where the Legislature has fixed the compensation or emoluments of said extra employees, and therefore the Auditor cannot issue warrants to any employees until the amount of their compensation is fixed by the Legislature, and number determined by the Legislature and a valid appropriation bill passed appropriating money to pay such employees.

If the Legislature has power to employ extra employees to serve the Legislature, acting in its investigating and inquisitorial capacity, and the Senate, sitting as a Court of Impeachment, in order that it may properly function in the manners mentioned, then it becomes necessary that the Legislature provide compensation for such employees, and section 56 of article 5 provides that the general appropriation bills shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the state, and for interest on the public debt, and that the salary of no officer or employee of the state, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee unless his employment and the amount of his salary shall have already been provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject.

So we hold that, before said extra employees above mentioned can be paid, a valid appropriation, under the provisions of the Constitution, must distinctly specify the sum and the subject to which it is to be applied, as public officers have only such authority as is conferred upon them by law, and the Legislature, or either House, cannot delegate to a committee thereof the power to fix the number or emoluments of

employees employed by the Legislature, acting in an inquisitorial and investigating capacity, or to either House, in performing such duties, or to the Senate, sitting as a Court of Impeachment, but such employees must be employed under authority of law enacted by the Legislature, and the emoluments or salary of such employees, and the number of such employees, must be fixed by the Legislature. Menefee v. Askew, 25 Okla. 623, 107 Pac. 159.

We further hold that, under section 6 of article 8, the Legislature has the power, and it is its duty, to appropriate such funds by special appropriation bills as may be necessary to carry into effect the provisions of article 8 of the Constitution, and that under section 56 of article 5 of the Constitution, before the Auditor can legally audit and draw vouchers or warrants in payment of salaries to employees of the Legislature, or the House of Representatives, or the Senate, or any legal committee of the House or Senate, or the Senate, sitting as a Court of Impeachment, there must be in force some law of this state authorizing the employment of such employees and fixing the number thereof, and fixing the amount of their emoluments or salary, and an appropriation, either general or special, as authorized by the Constitution, to pay such employees, and such bill, if it affects employees other than those included in the general appropriation bills authorized by the Constitution, must embrace but one subject, which must be clearly expressed therein. Menefee v. Askew, supra.

We therefore hold that there is in force a law providing for the payment of the marshal and assistant marshal of the Senate, and for sheriffs and deputy sheriffs in the several counties of the state in serving process and for witnesses in attending before the Court of Impeachment, and that there is no law in force fixing the number or amount of compensation of extra help for the House while acting in its investigating and inquisitorial capacity, and no law fixing the number or amount of compensation of the clerks and stenographers and other employees of the Senate, sitting as a Court of Impeachment, and until such law is enacted, the defendant would not be authorized to pay such extra employees, and they cannot be paid until an appropriation for such payment is provided for in an appropriation bill passed by the Legislature, designating the amount and the purpose for which such appropriation may be expended.

For the reasons herein expressed, the judgment of the district court of Oklahoma county is hereby affirmed, in so far as it applies to extra help for the Legislature, act-

ing in purely a legislative capacity, and as to extra employees authorized and provided for by law, and reversed and remanded to the district court of Oklahoma county, with directions to enter a further decree enjoining and restraining the defendant from preparing, auditing, and drawing vouchers or warrants in payment of salaries and emoluments of all extra employees not authorized by law until such time as a law may be enacted by the Legislature appropriating funds to pay such additional help, and to take such other action as may be consistent with this opinion.

LESTER, V. C. J., and CLARK, HEFNER, and CULLISON, JJ., concur.

HUNT, J., concurs in conclusion in so far as same affirms judgment of district court of Oklahoma county in denying injunction, but dissents from that portion of the opinion affirming the district court in granting the injunction as to certain employees.

RILEY and ANDREWS, JJ., dissent.

MASON, C. J., absent and not participating.

---

ANDREWS, J. (dissenting). I must dissent.

Attached to the petition in error of the plaintiff in error, who was the defendant below, is a record which on the title page is denominated "case-made." It consists of an index, petition, restraining order, answer, reply, motion for judgment on the pleadings, statement of the testimony, the proceedings had at the trial, journal entry of judgment, motion of plaintiff for new trial, motion of defendant for new trial, journal entry overruling each of the motions for new trial and the certificate of the court clerk certifying "that the foregoing is a full, true, correct and complete transcript of the record in the above entitled cause as the same now appears on file and of record in my office." It contains no order with reference to the motion for judgment on the pleadings.

The journal entry recites that, "after due hearing and consideration, it is by the court ordered, adjudged and decreed. * * *"

The motion of plaintiff for new trial, among other things, sets out:

"(1) That the findings, decision, and judgment of the court are not sustained by sufficient evidence."

"(3) Errors of law occurring at the trial and excepted to by the plaintiff."

And the motion for the defendant for new trial, among other things, sets out:

"First. Errors of law occurring at the trial, and excepted to by the defendant."

"Third. That such judgment and injunction of the court is not sustained by sufficient evidence, and is contrary to the evidence."

This record clearly shows that this judgment was rendered after a trial by the trial court and on the evidence.

If this case is here at all, it is here on a transcript and not by case-made. The evidence is not certified, there is no bill of exceptions, no service was had upon the adverse party, it was not settled or signed by the trial judge, and it was not filed in the trial court. Unless it is presented here as a transcript, the appeal must be dismissed for the reason that there is no record before the court.

Since the case, if here at all, is here on a transcript, we must apply the rule with reference to transcripts thereto.

This court has repeatedly held that only the petition, answer, reply, demurrers, process, orders, and judgments are a part of the judgment roll, and in order that motions, affidavits, evidence, instructions, and other preliminary proceedings may be presented, the same must be brought into the record by a bill of exceptions or case-made. Menton v. Shuttee, 11 Okla. 381, 67 Pac. 478; McHenry v. Spears, 84 Okla. 28, 202 Pac. 779; Shinn v. Hoopes, 96 Okla. 105, 220 Pac. 470.

Where the only errors alleged are in overruling motion for new trial and in not rendering judgment for the plaintiff in error on the pleadings, this court will not consider the same upon a transcript of the record and in the absence of a case-made. Collins v. Garvey, 67 Okla. 36, 171 Pac. 330; McHenry v. Spears, supra; Miller v. Markley, 49 Okla. 177, 152 Pac. 345.

But it is said that we ought to consider this case, because of its **public nature,** without regard to the condition of the record. I do not agree. The records of this court are full of instances where appeals involving substantially all of the property owned by citizens have been dismissed for failure to comply with the law with reference to appeals. It may be that the right of an employee of the state is of more importance than the right of other citizens of the state, but I do not agree. It may be that the established rules and practice with reference to appeals should be disregarded by this court in order that the court may determine whether or not an employee of the House of Representatives is entitled to collect his salary, but in my opinion his rights are no greater than the rights of other litigants before this court. This court has consistently refused to hear appeals because they were

presented in the form of a transcript rather than a case-made. I cannot be a party to establishing a different rule for the determination of the rights of a public official than is applied in the determination of the rights of the humblest citizen of Oklahoma.

But, it is said, the Legislature must function. True it is, but there is nothing before this court to show that there is any danger of this Legislature not functioning. True it is that the answer alleges that certain employees are necessary, but that is denied by the reply. The evidence is not before the court on appeal. The record here shows no necessity.

As was said by this court in State ex rel. Sigler v. Childers, State Auditor, 90 Okla. 11, 215 Pac. 773:

"It is intimated that if the members of the committee are unable to receive compensation for their services, its work necessarily ceases, and the Legislature and Governor will be deprived of certain valuable information. The province of the judicial branch of the government is to construe and administer the laws, and not to make them. This court has no power to make a law authorizing payment of the plaintiff's claim; that must be left to the Legislature."

And in Kellogg v. School District No. 10, Comanche Co., 13 Okla. 285, 74 Pac. 110, wherein it is said:

"Our distinguished associate, Mr. Justice Hainer, in his valuable work on Municipal Securities, sec. 480, correctly states the rule thus:

" 'But the general rule is that a resident taxpayer, although he shows no special private interest, may invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the municipality, or the illegal creation of a debt which he, in common with other property owners, may otherwise be compelled to pay.'

"From the foregoing authorities it appears that there are two roads for us to choose from; one, a dim trail, traveled by but few, and beset with many difficulties; the other, a broad, well-paved thoroughfare, numerously traveled, and leading to satisfactory results. Should there be any hesitation? We think not. It is the duty of those charged with the authority of establishing the principles which shall underlie and furnish the basis for our jurisprudence, to adopt those rules which, when applied to actual conditions, will bring about the best results to the community at large."

In Threadgill v. Peterson, 95 Okla. 187, 219 Pac. 389, the court said:

"To pretend to excuse its violation on the ground of necessity is merely in another form the plea in mitigation of punishment that 'necessity prompted larceny.' It furnishes neither a reason nor an excuse which, when it calls, finds the law 'at home.' It is outlaw, in the sense, it is outside of any sanction of the law, except that the law in its zeal to save without loss the less guilty makes a liability personally on the officers entering into such agreement."

But granted that the **public question** is of sufficient importance to warrant this court in disregarding that clearly established and long followed requirement as to an appeal, what have we then?

This action is brought for one purpose and one purpose only, and that is to enjoin the State Auditor "from allowing, preparing, drawing, or certifying any claim for emolument or compensation other than those provided by law." It is alleged in the petition that the present Legislature, in violation of section 49 of article 5 of the Constitution, is attempting to increase the number of employees of each House, and is attempting to increase the emolument of the employees of each House, and has caused to be placed upon the pay roll various and sundry persons and has agreed to prepare and certify vouchers for such persons in amounts exceeding $6. per day and as high as $20 a day, and that the only employees authorized by law are those specified under the Law of 1915, the same being section 109, C. O. S. 1921. It is further alleged that the defendant in his official capacity has audited, allowed, drawn and certified to the Treasurer of the State of Oklahoma warrants and vouchers issued in payment of claims for emoluments and salaries to such unauthorized persons in such unauthorized amounts, and will continue to do so unless enjoined.

The answer denies these allegations, but admits the employment of various persons and alleges authority therefor to be in House Joint Resolution No. 7 and Senate Joint Resolution No. 10 of this Legislature.

It is further alleged:

"That the House of Representatives is now exercising its legislative, inquisitorial, and impeachment powers"

—and that

"The Senate is now acting as part of the Legislature in regard to legislative matters and also sitting as a court of impeachment as authorized by the Constitution, and that because of such lawful duties and work the employment of stenographers, help, and assistance is an absolute necessity, and without same neither House could perform nor function as by law provided."

It is further alleged that House Resolution No. 5 authorized its committee to in-

quire into and investigate state officers, departments, and institutions

"for the purpose of presenting impeachment charges, and such committee was specifically authorized to hire and employ all such help and assistance that they deem necessary for such work"

—and that such committee has employed various persons as "process servers, investigators, attorneys, reporters, stenographers and clerical assistants, "and that such employment is necessary."

The reply is a general denial, and further alleges the unconstitutionality of the acts and resolutions pleaded by the defendant.

The only basis on which the judgment can be considered is the pleadings, as the transcript does not bring up the evidence.

An examination of the petition discloses nothing from which it can be inferred that this Legislature is performing any function other than its regular, ordinary legislative function. The answer pleads House Joint Resolution No. 7 and Senate Joint Resolution No. 10 as authority to employ "temporary help and assistance." It attempts to justify the action by pleading that it is now exercising its "legislative, inquisitorial, and impeachment powers" under House Resolution No. 5.

The reply, by its general denial, denies those allegations and they are specifically put in issue by the reply, except only that the adoption of House Joint Resolution No. 7, Senate Joint Resolution No. 10, and House Resolution No. 5 is inferentially admitted by the allegations of the unconstitutionality and insufficiency of those resolutions.

There is nothing in the pleadings to show that the Legislature is investigating or impeaching unless this court will take judicial knowledge that every Legislature investigates and attempts to impeach. Certainly this cannot be done.

The records of this court show no attempt by any previous Legislature to employ persons unauthorized by law to assist in investigation or impeachment. It is true that there have been many investigations and some impeachments in the history of this state, but heretofore, in so far as the records of this court show, those functions have been performed by the regularly constituted officers and employees of the Legislature.

Undoubtedly the direct conflict in the allegations made in the pleadings is the thing that caused the trial judge to fail to pass upon the motion for judgment on the pleadings, and when asked to strike a part of the testimony, to say:

"I am not going to strike it, but I am going to pass on this enjoining these temporary officers from being under that resolution, and the officers bringing the employees under that resolution; I will hold that resolution unconstitutional"

—and to overrule an objection to testimony taken, saying:

"Overruled for the purpose of letting the Supreme Court have the benefit of this testimony, if they want to consider it."

While these statements of the trial judge during the trial cannot be considered under the rules of this court on an appeal brought by a transcript, this court must consider them for the purpose of construing the issue presented by the pleadings in this case. The trial court so construed the pleadings, and rendered judgment on the evidence. The plaintiff so construed them. The defendant did the same. Will the court now attempt to determine the cause on a transcript without the evidence? If it does so, it should disregard the judgment and render the proper judgment.

What are the facts shown by the pleadings? The Legislature is attempting to increase the number of employees of each House and to increase the emoluments of the employees of each House, and has caused to be placed upon the pay roll various and sundry persons and has agreed to prepare and certify vouchers for such persons in amounts exceeding $6 per day and as high as $20 per day, and the State Auditor intends to issue warrants in payment to said employees at the increased salaries. This conduct is said to be authorized by reason of House Joint Resolution No. 7, Senate Joint Resolution No. 10, and House Resolution No. 5. The allegation that the "House of Representatives is now exercising its legislative, inquisitorial, and impeachment powers" is denied, and the allegation that the "Senate is now acting as part of the Legislature in regard to legislative matters and also sitting as a court of impeachment, as authorized by the Constitution, and that because of such lawful duties and work the employment of stenographers, help, and assistance is an absolute necessity, and without same neither House could perform nor function as by law provided," is denied.

The judgment rendered is based on these contested questions of fact. This record, viewed as a transcript, does not disclose that any investigation or impeachment is in progress. Investigation and impeachment is brought into this record only by the proceedings of the trial. The proceedings at the trial are no part of the judgment roll and are not before this court on transcript without bill of exceptions.

This appeal should be treated as all other appeals. It should be dismissed for the reason that no case-made has been filed herein. The right of refiling within the statutory period is not in question here.

House Joint Resolution No. 7, with the formal part omitted, provides:

"That the House of Representatives of the Twelfth Legislature is hereby authorized and empowered to hire and employ such temporary help and assistance as may in its judgment be necessary for the proper and efficient administration of business.

"That there is hereby appropriated out of the funds in the state treasury, not otherwise appropriated, the amount of $50,000 for the purpose of paying such temporary help and assistance."

Nothing is said therein as to any impeachment or investigation. It simply provides for the employment of "temporary help and assistance." The appropriation is for the purpose of paying "said temporary help and assistance." The trial court could not have found from this resolution that any investigation or impeachment was in progress. This resolution does not attempt to differentiate between "temporary help and assistance" for legislative purposes and "temporary help and assistance" for impeachment purposes. This resolution does not purport to provide an appropriation for anything other than "temporary help and assistance."

Senate Joint Resolution No. 10, with the formal parts omitted, provides:

"That the Senate of the Twelfth Legislature is hereby authorized and empowered to hire and employ such temporary help and assistance as may in its judgment be necessary for the proper and efficient administration of business.

"That there is hereby appropriated out of the funds in the state treasury, not otherwise appropriated, the amount of thirty-five thousand ($35,000) dollars for the purpose of paying such temporary help and assistance."

Nothing is said in this resolution as to any impeachment. It simply provides for the employment of "temporary help and assistance." This appropriation is for the purpose of paying "such temporary help and assistance." The trial court could not have found from this resolution that any investigation or impeachment was in progress. This resolution does not attempt to differentiate between "temporary help and assistance" for legislative purposes and "temporary help and assistance" for impeachment purposes. This resolution does not purport to provide an appropriation for any-

thing other than "temporary help and assistance."

House Joint Resolution No. 7 and Senate Joint Resolution No. 10 are clearly in conflict with section 49, article 5, of the Constitution, reading as follows:

"Sec. 49, Employees of Legislature—number and emolument. The Legislature shall not increase the number or emolument of its employees, or the employees of either House, except by general law, which shall not take effect during the term at which such increase was made"

—if the intent thereof is to increase either the number or emolument of the employees of either House, or if the intent is to have the same take effect during the present term of the Legislature.

Section 49, supra, is plain, clear, and unambiguous. It needs no construction. It speaks for itself. It is a limitation on the power of the Legislature. It not only limits the right to employ "except by general law," but it limits the right to make effective a "general law" during the term at which it is passed.

The power contained in section 36, article 5, of the Constitution, "to extend to all rightful subjects of legislation," is thereby limited to make increases in the number or emolument of employees effective only after the term at which the increase is made by general law.

The plaintiff in error argues that section 49, supra, does not apply to "temporary help and assistance," and that "temporary help and assistance" is not embraced within the word "employees," as used in section 49, supra. This section is capable of no such construction. To so construe it would be to defeat the purpose of the people in placing that limitation in the Constitution. To permit the Legislature to say that a man employed as reading clerk for the term of the Legislature was an employee of the Legislature, and that a man employed as a reading clerk during the absence of the regular reading clerk was not an employee of the Legislature, would be to throw down the restriction of the Constitution. Under such a theory of construction a Legislature could begin with employees performing its services and wind up with "temporary help and assistance" performing its services, and under this strained construction the "temporary help and assistance" could draw more compensation than the employees themselves.

If section 49, supra, is not a limitation on the power to increase the number of employees, it is not a limitation on the power to increase the emoluments of the employees.

As well might it be said that salaries of the employees could be increased temporarily as to say that the number of the employees could be increased temporarily. Neither can be increased "temporarily" or in any other way except by "general law," and that increase cannot take effect at the term at which the increase is made.

These resolutions are not in conflict with section 49, supra, if they are limited in their effect to employees of the House and Senate as provided in section 109, C. O. S. 1921, or to that character of employment provided for in chapter 2, article 2, C. O. S. 1921.

The Legislature, no doubt recognizing the validity of section 49, supra, soon after the adoption of the Constitution, provided by general law the employees and salaries of employees of the Legislature. S. L. 1907-8, ch. 66. In 1915 a new act was passed. The title of that act was:

"An act creating the offices of the employees of the Oklahoma Legislature and fixing the salaries of such employees." (Chapter 264, p. 515, Sess. Laws 1915.)

By it the offices of the employees were created, the employees were provided for, and the salary of each employee was fixed. That act remains in force and is carried forward and section 1 thereof appears as section 109, C. O. S. 1921.

Section 1, supra, provides the maximum number of employees. Section 2 of that act reads as follows:

"Section 2. The Senate or the House either may fail or refuse to elect the full number of the employees permitted under the provisions of this act or either House may, at any time, reduce the number of such employees whenever in the judgment of that body it appears that the full number of employees are not necessary."

Under section 2 the employment of all of those provided by section 1 is not required.

Under the provisions of the Act of 1907-8, carried forward and appearing as section 108, C. O. S. 1921, the same not having been repealed by the Act of 1915, future Legislatures are not prohibited from reducing salaries or from refusing to appropriate any sum therefor. Thus it was provided that future Legislatures might, by failing to make appropriations for any number of employees, remove those employees, or by reducing appropriations, reduce the salaries of employees.

An examination of our statutes discloses no provision for the increase of either the number or emolument of the employees provided for by section 109, supra. The Constitution requires the increase to be made by "general law" and it cannot be made by a joint resolution.

The contention that the Legislature has authority to exceed the limitations fixed by the Constitution in order to perform a duty enjoined by the Constitution was answered in State v. Childers, supra. There the matter under consideration was a House resolution, and a House Resolution is under consideration here, House Resolution No. 5. That resolution authorized the Speaker to appoint a committee of five members of the House to make an investigation after the session of the Legislature adjourned and fixed a per diem salary different from that prescribed · by the Constitution. Here the resolution authorized the committee to make an investigation and provides for temporary help and assistance. That resolution was in violation of section 21 of article 5 of the Constitution. This resolution is in violation of section 49 of article 5. In both cases the purpose of the resolution was the investigation of state officers. In that case it was held that all that portion of the resolution fixing the salary different from that fixed by the Constitution was void, and the court declined to pass upon the effect of that portion of the resolution providing for an investigation after the adjournment of the Legislature. The reasoning in these two cases must be the same. If, for the purpose of investigation, the House cannot change the compensation of its members, but is prohibited by the Constitution, then for the purpose of the investigation the House cannot increase the number or emoluments of its employees as prohibited by the Constitution. This authority is conclusive as to this matter. The contention that because the House is performing its inquisitorial function, it is authorized to violate the Constitution, is completely answered by the decision in State v. Childers, supra.

A construction of the Act of 1915 as a whole shows these two joint resolutions to be constitutional in so far as they authorize the employment of and appropriate funds for the payment of salaries of all employees designated in section 109, supra. In so far as these two resolutions attempt to provide for employees other than those designated in section 109, supra, or to increase salaries above that provided in section 109, supra, they are unconstitutional and void.

The plaintiff in error argues that section 49, supra, does not apply to employees necessary to the investigation by the House preliminary to the return of impeachment charges, or the presentation of impeachments in the Senate. He also urges that this section does not apply to employees nec-

essary to impeachment trials in the Senate. He contends that under House Resolution No. 5 the House is authorized to investigate, and if sufficient evidence of misconduct is disclosed by the evidence, to return impeachment changes and present impeachments in the Senate.

Article 8 of the Constitution provides for impeachment of state officers, removal of those not liable to impeachment, a presiding officer for the Senate sitting as a Court of Impeachment, that the Senators shall be under oath, a two-thirds vote for conviction, a limitation on the effect of impeachment, that "The House of Representatives shall present all impeachments," and that "The Legislature shall pass such laws as are necessary for carrying into effect the provisions of this article."

Under this article, it being the duty of the House to present impeachments, there is an implied power to make the necessary investigation preliminary to the presentment of impeachments. The question is, How shall that investigation be made? The answer is contained in section 6 of article 8. That section provides that the Legislature shall pass such laws as are necessary for carrying into effect the provisions for investigations, return of impeachment charges, presentment of impeachments and trials of impeachments.

Under section 6 of the article the first duty of the Legislature is to "pass such laws as are necessary." Article 8 is indefinite and uncertain. It requires legislation. The inclusion of section 6 therein plainly indicates the intent of the makers that the article will be supplemented by legislation. As an instance, how is the one charged to be brought before the Senate Court of Impeachment? That question is sufficient to show the necessity of legislation to make the provisions of the article effective.

Applying the same question to the House, how is a witness to be required to appear before the House for examination? The answer is that the Legislature must provide by legislation the procedure for investigations by the House.

A similar requirement is contained in section 45 of article 5, wherein it is provided that:

"The Legislature shall pass such laws as are necessary for carrying into effect the provisions of this Constitution.*

The Legislature evidently recognized these provisions, for in 1915 a code of procedure for impeachments was adopted. That code is contained in chapter 2, article 2, C. O. S. 1921. It makes provision for the definition of articles of impeachment, the con-

tents thereof, a board of managers of the House to make presentment thereof, organization of the Senate Court, appointment of officers of the Senate Court, employment of help for the Senate Court by the court itself, hearing, summons to accused, witnesses, evidence, process, orders, judgments, fees, a form of oath, voting on judgment, costs, trial after adjournment of the Legislature, general procedure, and a method for the payment of expenses and from which appropriation the same shall be paid.

Section 156 provides:

"It may employ such stenographic, clerical and other help as may be required."

This article and its provisions make it unnecessary for this court to pass on the right of the Senate Court of Impeachment to employ "temporary help and assistance." The Constitution required the Legislature to pass such acts as are necessary for carrying into effect the impeachment article of the Constitution. Such an act was passed. Under that act the Senate Court was authorized to employ such stenographic, clerical, and other help as might be required. Provision was made for service of process by the marshal of the court or by any sheriff. There seems to be nothing lacking in the act passed. For this reason all the necessary help and assistance for the Senate Court has been provided by general law enacted prior to this term.

The Senate Court employs its own help, and a procedure is provided for the payment of that help. The Senate has no authority to employ help other than that designated in the act of 1915.

For these reasons the Senate employees designated in the act of 1915 should be paid the salaries therein designated and the State Auditor should be enjoined from paying any other employees of the Senate.

Nothing herein should be considered as holding that the payment of employees of the Senate Court of Impeachment should be enjoined.

House Resolution No. 5 is not a "law." Its evident purpose is to provide a procedure for investigation and the return of impeachment charges. The House gets its authority to investigate from article 8 of the Constitution, through that provision requiring it to present impeachments. Article 8 provides that the Legislature shall pass such laws as are necessary for carrying into effect its provisions. The Legislature recognized this authority and enacted the Act of 1915. The Legislature has never seen fit to "pass such laws as are necessary" for giving the House any authority under sec. 6, article 8. The

House cannot by resolution pass such a law. In the absence of a law, the House can proceed in its investigation only through such rules as it cares to adopt for its own conduct and by its own members. It has authority under the Act of 1915 to employ those therein designated and pay such employees the salaries therein designated. Its board of managers is authorized under the Act of 1915 to present impeachments in the Senate, and their compensation is provided for therein. The witnesses necessary to the presentment of the impeachment, their fees and the fees for subpoena thereof, are fully provided for in the Act of 1915. The House, in the absence of a valid act of the Legislature, has no authority to employ help for investigation other than that prescribed in the Act of 1915.

The question as to the right of the House to employ help in addition to that provided by general law, is an abstract question, and will not be decided. It can have that right only when authorized by an act of the Legislature. No such act has been enacted. It cannot acquire that right by a House resolution.

The provision for the payment to members of the committee of "actual and necessary traveling expenses" is in direct conflict with section 21, article 5, as defined in Dixon v. Shaw, State Auditor, 122 Okla. 211, 253 Pac. 500.

It cannot be said that the House has the inherent right to employ help for investigation. That is precluded by article 8, which requires a legislative act to carry it out.

For these reasons, the House employees designated in the Act of 1915 should be paid the salaries therein designated, and the State Auditor should be enjoined from paying any other employee of the House.

There is another question brought before us on this record, and that is as to whether or not an appropriation has been made for the payment of these salaries.

It is fundamental in Oklahoma that, before the State Auditor may draw a warrant or the State Treasurer may pay the same, the purpose for which the warrant is drawn must be authorized by statute and an appropriation must have been made for the payment thereof.

House Resolution No. 5, omitting the formal part, provides that the House committee on investigation should investigate as it deems necessary and desirable; that it should begin work without delay, prosecute the same to its final determination as early as possible, and:

"1. Said committee shall have, and is hereby given, full and complete authority to hire and employ all such help and assistance in the prosecution of such investigation as it deems necessary and proper, the expenses of such to be paid out of the appropriation for the expenses of the House of Representatives of the Twelfth Legislature of the State of Oklahoma, after same have been properly audited by the house auditor and approved by the chairman of the committee. * * *

"5. The members of said committee, while engaged in such work during the session of the Legislature, shall receive no additional compensation therefor, except they may be paid actual and necessary traveling expenses incurred in the prosecution of such work, and such help and assistance may also be paid necessary traveling expenses.

"6. Such committee is further authorized to compel the attendance of any and all necessary witnesses found within the confines of the state of Oklahoma, such witnesses to be allowed mileage and other fees, as are now by law allowed witnesses appearing in the district courts of the state. Such fees and expenses to be paid out of the funds appropriated for the expenses of the House of Representatives of the Twelfth Legislature, and same to be paid in the same manner as other expenses provided for herein."

We call particular attention to that portion of section No. 5 reading as follows:

"Except they may be paid actual and necessary traveling expenses incurred in the prosecution of such work, and such help and assistance may also be paid necessary traveling expenses."

This resolution authorized the committee to investigate speedily and completely. It attempts to delegate to a committee "full and complete authority to hire and employ." It provides that the expenses of such investigation are "to be paid out of the appropriation for the expenses for the House of Representatives." It provides that the members shall be paid actual and necessary traveling expenses and that the help and assistance employed may be paid necessary traveling expenses. It provides that witnesses are to be allowed mileage and fees as allowed witnesses in the district courts, and that these fees and expenses are to be paid out of the funds appropriated for the expenses of the House.

Soon after the adoption of the Constitution of Oklahoma the Supreme Court had under consideration in the case of Menefee, State Treasurer. v. Askew, State Game and Fish Warden, 25 Okla. 623, 107 Pac. 159, the question of the salary and "actual and necessary traveling expenses" of the State Game and Fish Warden and the salary and "actual and necessary expenses" of not to exceed

eight deputy Game and Fish Wardens. After consideration of the case, and in an opinion covering ten pages in the State Reports, Mr. Justice Williams concluded that the passage of the act in question and the performance of the services created a debt, but the court concluded that that debt could not be realized on in the absence of the specific appropriation designating the sum as well as the object or purpose for which the appropriation was made. The first and fourth paragraphs of the syllabus were as follows:

"1. An 'appropriation' in this state is an authority of the Legislature, given at the proper time and in legal form to the proper officers, to apply a distinctly specified sum, from a designated fund out of the treasury in a given year, for a specified object or demand against the state."

"4. The provision of section 3, art. 6, providing that the Game and Fish Warden shall be reimbursed for his actual and necessary expenses, including expenses of catching and shipping game for propagating purposes, to be paid monthly and in the same manner as his salary and traveling expenses, does not constitute a valid appropriation, as the sum certain appropriated is not distinctly specified."

This question is before this court. The passage of these resolutions and their effect is identical with the matter under consideration in that case. There was an act adopted providing for the protection of fish, game, and birds, prescribing penalties for violation and providing for the enforcement thereof. Among those provisions was one for a State Game and Fish Warden, and another for not to exceed eight deputies. Section 5 of article 6 thereof provides for the salary of the warden and that

"he shall also be reimbursed for his actual and necessary office expenses, including expenses of catching and shipping game for propagating purposes, to be paid monthly and in the same manner as his salary and traveling expenses."

There was a similar provision as to the deputy wardens. In considering the matter, Mr. Justice Williams applied section 55 of article 5 of the Constitution and cited authorities to the effect that when the office is created by statute and the salary and the time of payment fixed by the statute, the act constituted an appropriation out of the treasury for the payment thereof as the same becomes due. He concluded in the following language:

"But the question here further arises: Is the salary of a stenographer employed by the State Game and Fish Warden, such compensation being paid to said stenographer as an actual and necessary office expense, a valid appropriation? Section 3, art. 6, provides that the State Game and Fish Warden shall be reimbursed for his actual office expenses, including expenses of catching and shipping game for propagating purposes, to be paid monthly in the same manner as his salary and traveling expenses. A valid appropriation under the provisions of our Constitution must distinctly specify the sum and the object to which it is to be applied. The object is distinctly specified, but the sum appropriated for actual and necessary office expenses is not set out or distinctly specified in any of the provisions of the act called to our attention, and in that respect the act falls. Under the provisions of this act, it seems that for such sum or sums as may be expended by the game and fish commissioner for actual and necessary office expenses a debt against such fund is created, but can be realized on by an appropriation only, specifically designating the sum, as well as the object or purposes for which the appropriation is made."

Applying this rule to the resolution before us, we find House Joint Resolution No. 7 in direct conflict therewith and inoperative. Senate Joint Resolution No. 10 is in direct conflict therewith and inoperative.

House Resolution No. 5, in so far as it provides for salaries for "help and assistance," "actual and necessary traveling expenses" of members, "actual and necessary traveling expenses" "of help and assistance," and "mileage and other fees" for witnesses, is in direct conflict therewith and is inoperative.

That brings us to an examination of the question as to whether a proper appropriation was made.

It is contended that we cannot consider Senate Bill No. 5 for the reason that it was not mentioned in the pleadings. That is not true, as the judgment rendered by the trial court gives as authority for denying a part of the prayer House Joint Resolution No. 5, House Joint Resolution No. 7, Senate Joint Resolution No. 10, and Senate Bill No. 5. The only resolution or bill attached to the pleadings is House Resolution No. 5. This court will take judicial notice of Senate Bill No. 5. The court's attention has been directed to it by the journal entry. Omitting the formal parts, that bill provides:

"Section 1. There is hereby appropriated out of any money in the State Treasury, not otherwise appropriated, the sum of $50,000, or so much thereof as may be necessary, to pay the mileage and per diem of the members of the Senate of the Twelfth Legislature, and salaries of the officers and employees of the Senate, and such contingent expenses as may be ordered paid therefrom,

including the preparation and publication of the journals and calendars of the Senate.

"Section 2. There is hereby appropriated out of any money in the State Treasury, not otherwise appropriated, the sum of $100,000, or so much thereof as may be necessary, to pay the mileage and per diem of the members of the House of Representatives of the Twelfth Legislature, and salaries of the officers and employees of the House of Representatives, and such contingent expenses as may be ordered paid therefrom, including the preparation and publication of the journals and calendars of the House of Representatives"

—and it contained an emergency clause. That bill, under the rule in Menefee v. Askew, supra, is inoperative. The sum appropriated for salaries of officers and employees and the sum appropriated for contingent expenses is not set out or distinctly specified therein. No distinction is made therein between employees and "temporary help and assistance."

Section 56 of article 5 of the Constitution defines what the general appropriation bill shall embrace and limits that bill by the provision:

"Nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided for by law."

None of the resolutions considered here provides the salary of any officer or employee. Section 56, supra, further provides that all other appropriations shall be made by separate bills, and employing but one subject. Senate Bill No. 5 is in direct conflict with the provisions of that section. It provides for an appropriation to pay the mileage and per diem of the members of the Senate and another appropriation to pay the mileage and per diem of the members of the House of Representatives. Each of those could be included in a general appropriation bill. But it also provides for the salary of the officers and employees of the Senate and the salaries of the officers and employees of the House of Representatives. Those could have been included in a general appropriation bill in so far as those officers and employees and the amount of their salaries had been provided by law. In so far as those officers and employees and their salaries had not been provided by law, they could not have been included in a general appropriation bill, under section 56, supra. In so far as Senate Bill No. 5 seeks to appropriate money for the payment of salaries of officers and employees not theretofore provided for by law and whose salaries had not theretofore been fixed by law,

a separate appropriation is required, and the inclusion of an appropriation for that purpose in a bill making an appropriation for the salaries of officers and employees theretofore provided for by law and whose salaries had been fixed theretofore by law is in violation of the last provision of section 56, supra,

"All other appropriations shall be made by separate bills, each embracing but one subject."

It will not be contended that Senate Bill No. 5 is a general appropriation bill. Since Senate Bill No. 5 is not a general appropriation bill, it must be construed with reference to that portion of section 56, supra, last quoted, and being so construed, it must fail because it attempted to make an appropriation for the payment of salaries of officers and employees not theretofore provided for by law and whose salaries had not theretofore been fixed by law in the same bill with appropriations for the payment of salaries of officers and employees who had been provided for by law and whose salaries had been fixed theretofore by law. The appropriations for the two separate provisions cannot be made in one bill.

For these reasons, Senate Bill No. 5 is in violation of section 56, supra, and there is no appropriation against which the State Auditor may draw warrants and from which the State Treasurer may pay funds in payment of salaries of officers and employees other than those provided for under the Laws of 1915 as carried forward in C. O. S. 1921.

Nor has there been an appropriation made for the payment of witnesses, witness fees, or mileage in the House. Under the rule announced in Menefee v. Askew, supra, the appropriation failed to specifically designate the sum as well as the object or purpose for which the appropriation is made. Under that construction an appropriation bill is required to set out separately the amount appropriated for salaries of officers, the amount of the salaries of the employees, and amounts for witness fees and mileage, and that appropriation bill must specifically designate the sum appropriated for each of the objects for which the bill makes appropriation. The appropriation as made in Senate Bill No 5. of $50,000, or so much thereof as may be necessary to pay the mileage and per diem of the members of the Senate of the Twelfth Legislature and the salaries of the officers and employees of the Senate and such contingent expenses as may be ordered paid therefrom, including the preparation and publication of the journals and calendars of the Senate, it not an appropriation specifi-

cally designating the sum as well as the object or purpose for which the appropriation was made, and is not sufficiently definite. When that appropriation is attempted to be made in the same bill with a similar provision for the House, and when each of the appropriations so attempted to be made in one bill attempts to make an appropriation for the payment of the salaries of the officers and employees not already provided for by law and whose salaries have not already been fixed by law, then the entire bill is in violation of section 56, supra, and is unconstitutional and void.

The question was raised in this case as to the effect of section 49, supra, upon the rights of the Senate to employ necessary help for impeachment purposes in addition to the regular employees, and to have that employment take effect at the same term at which the act is passed providing for the impeachment, and the right of the House of Representatives to employ help necessary to the investigation and presentment of impeachments in addition to the regular employees, and to have that employment take effect at the same term at which the act is passed providing for the employment.

Neither of these questions is before this court for determination. They were not raised in the petition. They were raised in the answer. The answer alleged the employment, but those allegations were denied by the general denial in the reply, so that those issues are not before this court for determination. If the court, because of the nature of the "public question," is determined to consider these questions even though there is a conflict in the pleadings and the evidence is not before the court, then the holding of the majority opinion that section 49, supra, is not a limitation upon the authority of the Legislature, by the enactment of legislation, to provide for the employment of employees of either House who are required for the purpose of making an investigation necessary to the presentment of an impeachment by the House or for the purpose of trial of the impeachment charges by the Senate, is correct. However, before that can be done, a valid act of the Legislature must be enacted providing for the employment of such additional assistance. That act must provide the number of employees and the compensation to be paid to each. No such act has been shown to this court other than the provisions of the Laws of 1915. The senate bill and the resolutions before this court are not sufficient.

The record in this case shows no valid appropriation for the payment of salaries of officers and employees of either the House or Senate, other than those provided for in the Session Laws of 1915, and the trial court was in error in denying the application of the plaintiff for an injunction.

This cause should be reversed, with directions to the trial court to enter an order and grant an injunction restraining the State Auditor from approving and paying any claims or issuing any warrants in payment of salaries of the officers or employees of the House or the Senate or witness fees or other expenses of the House or the Senate except only those authorized under the provisions of the Laws of 1915.

### On Rehearing.

PER CURIAM. On rehearing our attention is called to the cases of Bryan v. Menefee, 21 Okla. 1, 95 Pac. 471, Butler v. Carter, 87 Okla. 70, 209 Pac. 965, McClelland v. Lewis, 40 Okla. 551, 139 Pac. 990, and Edwards v. Childers, 102 Okla. 158, 228 Pac. 472, and sections 8648 to 8665, inclusive, and sections 9228 and 9250, C. O. S. 1921.

We are of the opinion that these cases are not applicable to the case at bar and are in no manner overruled by the decision in this case and are clearly distinguishable from this case, and were therefore not discussed in the original opinion, but are here mentioned for the reason that counsel for plaintiff in error insists that there might be confusion in the district courts in construing the holdings in those cases and in this case, and for that reason we have decided to announce the view of this court in regard to the same. Rehearing denied.

HUNT. J.. dissents.