The ASSOCIATION OF CLASSROOM TEACHERS OF MOORE, Oklahoma, Gerald Crows, Individually and as President of the Association of Classroom Teachers of Moore, Oklahoma, and the Oklahoma Education Association, Inc., a nonprofit corporation, Appellees,

v.

The BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT #2, CLEVELAND COUNTY, State of Oklahoma, Carrol Matthesen, President of the Board of Education of Independent School District #2 of Cleveland County, State of Oklahoma, Jack Henson, Leon Brining and Don Ledbetter, all members of the Board of Education of Independent School District #2 of Cleveland County, State of Oklahoma, Appellants.

No. 47626.

Supreme Court of Oklahoma.

June 21, 1977.

Lana Jeanne Tyree, Oklahoma City, for appellee, The Ass'n of Classroom Teachers of Moore, Okl.

Eugene Mathews, Oklahoma City, for appellee, The Oklahoma Ed. Ass'n, Inc.

Roger Griffith, Norman, and Larry French, Oklahoma City, for appellants.

DAVISON, Justice.

70 O.S.1971 § 509.2 provides:

"The local board of education *shall recognize* a professional organization *that secures* authorization signed by a majority of the professional educators designating said organization as their representative for negotiations. The members of the professional organization shall be professional educators employed by and serving in the district they propose to represent and no other person shall be authorized to represent the professional educators. The bargaining representatives of the professional organization shall be elected by a majority of the professional educators of the district they are to represent at an election called after proper notice is given to all the professional educators of the district. Any person who desires not to be represented by any organization, as provided for herein, may so state in writing to his board of education." [Emphasis added]

Appellee, The Association of Classroom Teachers of Moore, Oklahoma, ACT, claiming to have secured authorizations from the majority of the professional educators within the Board of Education, Independent School District #2, Cleveland County, Oklahoma, requested that the Board of Education recognize ACT as the exclusive representative for negotiations of all professional educators in Independent School District #2 of Cleveland County. After the Board refused, or at least failed to recognize ACT as the negotiations representative, ACT again appealed to the Board, offering to submit the signed authorization cards to a mutually acceptable neutral third party for verification and for counting. The Board, refusing to agree to such a procedure, demanded that they or their designated representative be given the actual signed authorizations to examine, verify and count, indicating that they would not recognize ACT as the negotiations representative until such time as the signed authorization cards were made available to the Board or their representative.

Thereafter, ACT made application to the District Court of Cleveland County asking that the court issue a writ of mandamus, requiring the Board of Education to recognize ACT as the negotiations representative.

At the trial, the trial judge appointed two officers of the court, one attorney from each side of the dispute, to examine the authorization cards and determine whether ACT had received signed authorization cards from a majority of professional educators in the Moore School District. Both attorneys, as officers of the court, were admonished not to disclose the names of the individuals or other information obtained in performing the examination and counting of the authorization cards, until such time as the court may order the names disclosed. The attorneys, acting as officers of the court, examined and counted the cards and their tally clearly showed that ACT had received signed authorization cards from a majority of the professional educators in the Moore School District. Accordingly, Judge Brown issued a writ of mandamus, ordering the Board of Education to recognize ACT as the negotiating representative of the professional educators in the School District. Additionally, in an amended memorandum opinion, the trial court held that in the event that the teachers and a School Board agreed, signed authorization cards may be submitted directly to the Board for verification. However, the court went on to state that if this procedure cannot be agreed upon, a reasonable means of verification would be to submit the authorization cards to a neutral third party who may count and report their findings to the Board of Education.

In its original memorandum, the trial court indicated that the Board may solicit letters from teachers within the School Dis-

trict, stating that the teachers do not wish to be represented by ACT. In making the statement, the trial court referred to the last sentence of 70 O.S. § 509.2, which provides: "* * * Any person who desires not to be represented by any organization, as provided for herein, may so state in writing to his board of education." In amending its memorandum, the trial court, after hearing arguments of the parties, deleted this paragraph from the final memorandum issued.

The School Board appeals from the ruling of the trial court, arguing that the trial court erred in the following respects:

1. The School Board, pursuant to the provisions of 70 O.S.1971 § 509.1 et seq., is given the responsibility of determining whether a professional organization has secured authorized signature cards from a majority of professional educators, before designating the professional organization as the negotiations representative of professional educators, and that in making that determination, the Board has a right to have the actual authorization cards submitted to the Board—the trial court failed to recognize this right.

2. Since the Board has a right to personally examine signed authorization cards, and not submit to a verification by an independent third party, the trial court lacked the authority to order the counting of the authorization cards by counsel for both parties.

We first consider whether the Board of Education had a right to personally examine the signed authorization cards. In addressing this issue, we first note that 70 O.S.1971 § 509.2 is silent on the method to be used by a local board of education in determining whether a professional organization has secured authorizations signed by a majority of educators. The Board argues that it may make the determination as it sees fit, and that its duty cannot be delegated to a neutral third party. Conversely, ACT argues that when both teachers and the Board agree to allow the Board to personally examine the signed verification cards, such a procedure is reasonable and

may be used. However, ACT urges that when the parties cannot agree, the Board does not have a right to demand personal access to the signed authorizations, as the Board, although it has the right to reasonably verify the result of a polling of educators, *does not have the right to learn the identity of those individuals who signed the authorizations.* ACT points out that the teachers fear reprisals in the event that they are individually identified, and that historically, employers have resented and opposed organized negotiations. Additionally, ACT argues that employees are easily intimidated when those who hold the purse strings have the knowledge of the identity of individual employees who desire to be represented in negotiations with the employer. As ACT points out, the employer, in this case the Board of Education, controls hiring, firing, promotions, wages, benefits and the like, thus employees are reluctant to openly oppose their employer. The unnecessary disclosure of the identity of those employees seeking representation impedes and hampers their freedom of choice and intimidates employees, discouraging the free exercise of the right granted by statute—the right to organize and be represented at the bargaining table.

In support of its argument, ACT cites several Federal cases similar to the one before us in *National Labor Relations Board v. New Era Die Co.,* 118 F.2d 500 (3 Cir. 1941), the Court stated:

"A union representative properly refused to show cards signed by employees to employer's officer, since showing cards would deprive employees of their secrecy of choice * * *."

Also see *N.L.R.B. v. Purity Food Stores, Inc.,* 354 F.2d 926 (1 Cir. 1965), in which the Court stated:

"Employer which had, for no good reason, refused an offer of independent card check could not assert good faith doubt as to number of employees union claimed to represent."

Although these Federal cases are based upon different law, and we are not bound by them, we adopt the rationale utilized by

those courts. In denying an employer's right to possession of authorization cards, the courts suggest that employers must recognize organizations which tender a *reasonable offer of proof* through neutral third parties. Additionally, the Federal courts suggest that secrecy is an essential element of union authorization, as identification of individuals authorizing a union to represent them, might lead to reprisals. A possible threat of reprisals is a real one, as recognized by the Legislature of this State in its passage of 70 O.S.1971 § 509.9, which provides:

"No employee shall be discriminated against by the board of education, superintendent or any other administrative officer of a district or by the professional or nonprofessional organization, its officers or any member thereof because of his exercise or nonexercise of rights under this act."

■ Like the Federal court, and like the Legislature of this State, this Court recognizes that reprisals against educators for their attempts to be represented by negotiating representatives constitutes a real danger. Although unlawful, such reprisals do occur, despite their illegal nature. There can be little doubt that the possible existence of such reprisals can have a chilling effect upon an employee's exercise of free choice. To interpret the statute before us as requiring employees to surrender actual possession of the signed authorizations to the employer, thus enabling the employer to learn the identity of employees signing the cards, would be to construe the statute in such a way as to increase the potential for reprisals by an employer. We hold that such an interpretation would be unwise and unwarranted. Section 509.2 of Title 70, merely provides that boards of education *shall recognize* professional organizations *that secure* authorizations signed by a majority of professional educators. Although, the boards of education may clearly require proof of such signed authorization, nothing in the statute requires that the authorizations be turned over to the Board. The statute clearly contemplates that the professional organizations will present proof of

such authorization, but does not suggest that the Board may demand a particular type of proof before it is bound to recognize the organization. We construe the statute to put a burden upon the professional organization to present reasonable proof of authorization to the Board, when such burden is met, the organization must be recognized. To construe the statute to require a specific type of proof, which would reveal the identity of those signing the authorizations, would increase the possibility of reprisals by school boards and would be contra to the intent of the act, which is to promote the free choice of employee educators to organize for the purpose of bargaining, if desired. Accordingly, we hold that a school board may not demand that it personally be allowed to examine the authorization cards. We also hold that once a professional organization presents reasonable proof of its having secured signed authorization by a majority of educators, school boards must recognize that organization as the negotiating agent of the educators in its district.

■ Lastly, we consider whether the trial court exceeded its authority in ordering officers of the court to examine and count the signed authorization cards. In determining whether to issue a writ of mandamus, the trial court was called upon to determine whether reasonable proof of the professional organizations having secured sufficient signed authorization cards was presented to the Board. The evidence before the trial court demonstrated that ACT had offered to submit the signed authorization cards to a mutually acceptable independent third party, and that the Board had refused such a procedure. In offering to submit the signed authorization cards to a third independent party, we hold that ACT offered to submit to a reasonable means of proving that sufficient authorization had been secured. The trial court, in appointing officers of the court to examine and count the signed authorizations, merely gave effect to ACT's offer of proof and in so doing, used a legitimate means to determine an issue before it. We cannot say that the Court

exceeded its powers in appointing the officers of the court to aid in its determination of the issue before it. Accordingly, we affirm the trial court's action. For the above stated reasons, we affirm the action and decision of the trial court.

AFFIRMED.

All the Justices concur.