2016 OK 18

Nathan HEATH, Plaintiff/Appellant,

v.

GUARDIAN INTERLOCK NETWORK, INC., a Domestic Corporation; Guardian Interlock, Inc., a Foreign Corporation; and Guardian Interlock, LLC., a Domestic Limited Liability Company, Defendants/Appellees.

No. 114,023.

Supreme Court of Oklahoma.

Feb. 23, 2016.

Mark B. Houts, Lucas J. Nunson, Edmond, Oklahoma, John M. Bunting, Patrick L. Hullum, Amy D. White, Lyndon W. Whitmire, Thomas G. Wolfe, Oklahoma City, Oklahoma, for Appellant.

Tim N. Cheek, Tyler J. Coble, Dixie Craven, Gerard F. Pignato, Oklahoma City, Oklahoma, George A. Gasper, Indianapolis, Indiana, for Appellee Guardian Interlock, Inc.

Jared B. Haines, Assistant Solicitor General, Oklahoma City, Oklahoma, On Behalf of the State of Oklahoma Attorney General.

KAUGER, J.:

¶1 The dispositive issue presented[1] is whether the $25.00 monthly maintenance fee limitation set forth in 47 O.S. Supp. 2013 § 6–212.3[2] for an interlock device installed in vehicles, precludes the collection of lease/rental fees, taxes, and insurance/damage waiver fees, etc. in excess of $25.00. We hold that the $25.00 maintenance fee cap set forth in 47 O.S. Supp. 2013 § 6–212.3 does not preclude the collection of other fees such as rental fees, taxes, or insurance/damage waiver fees, etc.

## FACTS

¶2 On July 18, 2012, the plaintiff/appellant, Nathan Heath (Heath/driver) was arrested on a complaint of driving under the influence of alcohol in Oklahoma County, Oklahoma. [Apparently, this was his second arrest for driving under the influence after an arrest sometime in 2009, also in Oklahoma County.] He pled guilty to one count of driving under the influence of alcohol, and received a three (3) year deferred sentence. On August 11, 2012, he again drove intoxicated and this time crashed into a parked car. He was charged with, and pled guilty to, another three (3) year deferred sentence. After Heath failed to pay supervision fees, perform community service work, attend a live victim impact panel and obtain alcohol/drug assessments, arrest warrants were issued for violation of his deferred sentences.

¶3 As a result of both the July 18, 2012, and August 11, 2012, convictions, the Okla-

---

1. The Petition in Error lists 21 separate issues which we consolidate into one dispositive issue.

2. Title 47 O.S. Supp. 2013 § 6–212.3 provides in pertinent part:
   A. Whenever the records of the Department of Public Safety reflect the revocation of the driving privilege of a person as provided in subsection A of Section 6–205.1 of this title, the Department shall require the installation of an ignition interlock device, at the expense of the person, as provided in subsection D of this section, after the mandatory period of revocation, as prescribed by Section 6–205.1 of this title, ...
   D. 1. The requirements of subsection A or B, as applicable, of this section shall be a prerequisite and condition for reinstatement of driving privileges, in addition to other conditions for driving privilege reinstatement provided by law or by rule of the Department. Upon request and eligibility, the Department shall issue a restricted driver license to the person, upon payment of a restricted driver license fee of Fifty Dollars ($50.00) and all other appropriate fees by the person. The restricted driver license and the driving record of the person shall indicate by an appropriate restriction that the person is only authorized to operate a vehicle upon which an ignition interlock is installed. If the person is operating a motor vehicle owned or leased by an employer who has not given permission for an ignition interlock device to be installed, the employer shall provide the person with a letter, on official letterhead of the employer, which the person shall carry in his or her immediate possession at all times when operating a motor vehicle and shall display for examination and inspection upon demand of a peace officer....
   E. Installation of an ignition interlock device pursuant to subsection A or B of this section shall run concurrently with a court order, if any, for installation of an ignition interlock device, or devices pursuant to the same conviction.
   F. The person shall pay the monthly maintenance fee, not to exceed Twenty-five Dollars ($25.00) per month, for each ignition interlock device installed pursuant to this section. The person shall comply with all provisions of law regarding ignition interlock devices.
   G. The ignition interlock device provider shall make available to the Department regular reports of violations, if any, for each ignition interlock device installed pursuant to this section....
   Because the $25.00 limitation existed when Heath's license was suspended and the pertinent portions of the statute have remained unchanged since that time, references are to the current version.

homa Department of Public Safety revoked Heath's drivers license on August 17, 2012, and on September 10, 2012, respectively. Subsequently, Heath obtained a restricted license which permitted him to drive only vehicles equipped with a Board of Tests for Alcohol and Drug Influence (Board of Tests) approved ignition interlock device.

¶4 On December 20, 2013, Heath contracted with the defendant/appellee, Guardian In-terlock (Guardian) to install and maintain in Heath's car an interlock device known as the Guardian Interlock Ignition Interlock System (interlock device). The lease term was from December 20, 2013, to December 20, 2018. The monthly rental payments under the lease was $39.99 (plus sales tax). Additionally, the inception of the lease required the following payments:

| | |
|---|---|
| Installation Charge | $85.00 |
| First Monthly or Bi–Monthly Payment | $39.99 |
| Sales Tax | $9.63 |
| Total Due | $134.62 |

The total payments under the lease were listed as follows:

| | |
|---|---|
| Installation Fee | $91.28 |
| Total of All Monthly or Bi–Monthly Monitoring Visit Fees | $2,627.71 |
| Total of All Lease Payments | $2,600.35 |
| De–Installation Fee | $50.00 |
| Total of All Other Fees and Charges | $0.00 |
| Total of All Payments under Lease | $5,369.34 |

¶5 The lease also had a maintenance clause in which the lessee was directed to schedule and keep monthly or bi-monthly monitoring appointments.[3] Heath also accepted a loss/damage waiver agreement for a charge of $5.00 a month which would release him from any liability for theft or damage to the interlock device. It appears the total amount of Heath's monthly payment is $75.40 a month, as evidenced by receipts for his payments, even though this amount is not reflected on the face of the lease.

¶6 On September 2, 2014, Heath filed a Class Action Petition in the District Court of Oklahoma County against Guardian. Heath argued that: 1) pursuant to 47 O.S. Supp. 2013 § 6-212.3,[4] DUI offenders with revoked driving privileges are allowed to only drive vehicles equipped with an ignition interlock device; 2) the statute limits the monthly maintenance fee on such devices to $25.00; and 3) Heath argues that he has had an ignition interlock device installed on his vehicle since December of 2013, but has to pay a $39.00 lease payment, a $25.00 mainte-nance/monitoring fee, $5.41 in sales tax, and a $5.00 damage waiver.

¶7 On February 27, 2015, Guardian filed a motion for summary judgment arguing that the undisputed facts establish that Heath has never been charged in excess of $25.00 for maintenance and that anything else he was charged was not a maintenance fee and thus not limited by the express language of the statute. On May 1, 2015, the trial court held a hearing on the motion for summary judg-

---

3. The maintenance clause provided in pertinent part:

MAINTENANCE. Lessee will schedule and keep monthly or bi-monthly monitoring appointments at the Guardian Interlock Service Center at the following location 3131 NW 38th Street Oklahoma City OK 73112 or the designated service location. LESSEE MUST RE-TURN FOR MONITORING SERVICE NO LA-TER THAN THE 20th DAY OF FEBRUARY AND 2014. The Service Center will monitor and calibrate the System, make necessary repairs or adjustments, and report compliance/non-compliance with the monthly or bi-monthly monitoring schedule to the Lessee ...

4. Title 47 O.S. Supp. 2013 § 6–212.3, see note 2, supra.

ment. In an order filed May 12, 2015, the trial court granted Guardian's motion for summary judgment. Heath appealed on June 10, 2015.

¶ 8 On June 15, 2015, the Court requested the Oklahoma Attorney General to respond to Heath's appeal. We retained the cause on June 23, 2015. The Attorney General responded on July 6, 2015, arguing that: 1) the ordinary meaning of "maintenance fee" does not include charges for other goods and other services; 2) the petitioner's reading of the statute is unreasonable; and 3) the petitioner's interpretation is contrary to the public policy intended to be advanced by the Legislature. The briefing cycle was completed on August 17, 2015, and the cause was assigned on October 16, 2015.

**THE $25.00 MAINTENANCE FEE CAP SET FORTH IN 47 O.S. Supp. 2013 § 6–212.3 DOES NOT PRECLUDE THE COLLECTION OF OTHER FEES SUCH AS RENTAL FEES, TAXES, OR INSURANCE/DAMAGE WAIVER FEES, ETC.**

¶ 9 Title 47 O.S. Supp. 2005 § 6–212.3 was enacted in 2005 and it provided in pertinent part:

> ... E. The person [restricted licensed driver] shall pay the monthly maintenance fee for each ignition interlock device installed pursuant to this section. The person shall comply with all provisions of law regarding ignition interlocutory devices....

It was amended effective November 1, 2011, to provide in pertinent part:

> ... F. The person [restricted licensed driver] shall pay the monthly maintenance fee, not to exceed Twenty-five Dollars ($25.00) per month, for each ignition interlock device installed pursuant to this sec-

tion. The person shall comply with all provisions of law regarding ignition interlock devices....

The statute was again amended in 2012 and 2013, but the pertinent portions remain unchanged since 2011. Consequently, we reference the current 2013 version.

¶ 10 Heath argues that the legislative intent and statutory history show that the $25.00 maintenance fee limitation in § 6–212.3 was intended to apply to any and all fees. In support of his argument, Heath contends that: 1) the statute was amended in 2011 to provide a cost limitation of $25.00 which did not exist before; 2) the bill, as introduced, did not include a $25.00 cap, but the cap was added by the house committee; 3) four bill summaries provide that the "cost" or "fee" for each interlock device would not exceed $25.00 a month without any mention of "maintenance;" and 4) the bill's author stated on the Senate floor that while he believed companies were currently charging $70.00 or so a month, the bill would cut that down to $25.00.

¶ 11 Guardian argues that the plain language of 47 O.S. Supp. 2013 § 6–212.3[5] show that it only applies to maintenance fees and that because the statute's plain, ordinary meaning is clear, no further analysis of the statute is necessary. Nevertheless, Guardian also contends that: 1) the Board of Tests, and the Tax Commission also interpret § 6–212.3 as applying only to maintenance fees; and 2) public policy requires that statute to be read as applying only to maintenance fees because no company would offer such devices or could afford to offer such devices in Oklahoma without being able to recoup their costs of providing and maintaining such devices.

¶ 12 In addition to the testimony of both the past and current director of the Board of Tests stating that the statute applies only to maintenance fees,[6] Guardian provides the

---

**5.** Title 47 O.S. Supp. 2013 § 6–212.3, see note 2, supra.

**6.** The Board of Tests enacts the administrative rules for ignition interlock devices in Oklahoma, Oklahoma Administrative Code 40:50–1–1 et seq., sets forth the requirements for such devices, approval of licensed vendors, installation requirements, maintenance and calibration requirements etc. The rules themselves do not

define "maintenance fee" but they do define as "fee" as a "non-refundable administrative fee." Oklahoma Administrative Code 40:50–1–1.1 Definitions. According to Guardian, both the previous director of the Board of Tests and the current director, both unequivocally state that the statute applies only to maintenance fees, and not the total amount that may be charged for all fees. Attached to Guardian's Motion for Summary

webpage of the Board of Tests regarding Ignition Interlocutory Devices and it provides in pertinent part:

### Service Centers

The BOT approves and physically inspects ignition interlock service centers on an annual basis. A license is issued to each service center. Should you question whether a service center is properly licensed, you can ask to see the license or contact the BOT for license verification. Ignition interlock devices are leased and serviced through a statewide network of *licensed service centers.* The lease and service agreement may include fees for installation, monthly service, and removal of the ignition interlock device. Other fees may be assessed by the service center for rescheduling, *violation resets, permanent lockouts,* etc. You are encouraged to contact the manufacturer to inquire about types and costs of fees. (Emphasis in original)

Judgment is the deposition testimony of both directors supporting testimony.

7. The letter from the Oklahoma Tax Commission is dated December 28, 2011, and it is addressed to James R. Adelman. It states in pertinent part:

Under the new law, due to go into effect on the 1st of November, 2011, the legislature has stated that the provider is to charge $25.00 to maintain and calibrate the equipment. It is anticipated that most providers will then charge an additional rate for rental and the separately stated labor charges....

The sale of tangible personal property, unless specifically exempted by the provisions of the Oklahoma Sales Tax Code, is subject to the levy of sales tax. 68 O.S. § 1354(A)(1). Gross receipts, gross proceeds or sales price is the base upon which sales tax is calculated. The terms are synonymous and are defined as "the total amount of consideration ... for which personal property or services are sold, leased, or rented....whether received in money or otherwise ..." 68 O.S. 1352(a)(4).

Therefore, sales tax should be calculated on the $25.00 maintenance and calibration charge....

The letter is signed by Brenda Sullivan, Tax Policy Analyst.

8. See, *Gladstone v. Bartlesville Independent School Dist. No. 30,* 2003 OK 30, ¶ 18, 66 P.3d 442.

Guardian also submits a letter from the Oklahoma Tax Commission to the Oklahoma Ignition Interlock Association which states that in addition to the $25.00 maintenance fee, it is anticipated that most providers will charge additional rates for rental and labor charges and that the $25.00 maintenance fee is subject to sales tax.[7]

¶ 13 We agree with Guardian that the statute is unambiguous and that Heath's attempts to look behind the unambiguous statute are thwarted by clear and concise Oklahoma law regarding statutory construction. Unlike Congress, or some other states, the Oklahoma Legislature does not maintain an extensive legislative record or history of legislative matters.[8] Even if we had such a legislative record or history, when confronted with a statute that is plain and unambiguous on its face, we would not look to such legislative history as a guide to its meaning because looking beyond an unambiguous statute to legislative history would only create ambiguity, not resolve it.[9] Nor would we look to the testimony of individual lawmakers.[10]

9. See, *Keating v. Edmondson,* 2001 OK 110, ¶ 15, 37 P.3d 882 [When a statute's language is plain and unambiguous and the meaning clear and unmistakable, no justification exists for the use of interpretative devices to fabricate a different meaning.]; *Roberts v. United States,* 906 F.2d 1440, 1442 (10th Cir.1990) ["When statutory language is not ambiguous, it is conclusive 'absent a clearly expressed legislative intent to the contrary.' *Miller v. Commissioner,* 836 F.2d 1274, 1283 (10th Cir.1988) (quoting *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Such an expression of contrary legislative intent must appear on the face of the statute, read in its entirety; beyond the statute itself, "legislative history should be used to resolve ambiguity, not create it." *Miller,* 836 F.2d at 1283 (citing *United States v. Missouri Pa. R.R.,* 278 U.S. 269, 278, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929); *United States v. Rone,* 598 F.2d 564, 569 (9th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980)); see also *United States v. Brian N.,* 900 F.2d 218, 221 (10th Cir.1990) (refusing to fully analyze legislative history because statutory language was unambiguous)."].

10. *Haynes v. Caporal,* 1977 OK 166, ¶ 10, 571 P.2d 430 ["At trial, legislative intent of § 536 was sought to be established through the testimony of an individual senator and house member at the time of its passage. This court is not bound, and need not consider such evidence. Testimony of

¶ 14 Only where the legislative intent cannot be ascertained from the statutory language, i.e. in cases of ambiguity or conflict, are rules of statutory construction employed.[11] Intent is ascertained from the whole act considering its general purpose and objective with relevant provisions considered together to give full force and effect to each.[12] The Court presumes that the Legislature expressed its intent and that it intended what it expressed.[13] Statutes are interpreted to attain that purpose,[14] championing the broad public policy purposes underlying them.[15] In the absence of a contrary definition used in a legislative act, we must assume that the lawmaking authority intended for them to have the same meaning as that attributed to them in ordinary and usual parlance.[16]

¶ 15 The overall purpose of the restricted driving statutes does not appear to be to save drivers with a restricted license money on all fees and costs associated with an interlock ignition device. This is evidenced in 47 O.S. Supp. 2013 § 6–212.3(A) which clearly states that "the Department [of Public Safety] shall require the installation of an ignition interlock device, at the expense of the person, as provided in subsection D of this section."[17] Subsection D states that "upon payment of a restricted driver license fee of Fifty Dollars ($50.00) and all other appropriate fees by the person."[18] The Legislature has clearly chosen to limit only the amount of the maintenance fee which has been required since the statute's inception.

¶ 16 Rather, the obvious purpose and objective of the statute is to ensure that a convicted drunk driver does not continue to put themselves and others at risk by their reckless behavior. Requiring installment of an interlock device clearly attempts to curtail such a risk and reckless behavior. In the context of motor vehicles and associated equipment, "maintenance" means "the upkeep of property or equipment and "maintain" means to keep in good condition by making repairs, correcting problems, etc."[19] This ordinary definition is distinguished from commonly used terms like sale, rental, lease, installation, and even taxes.

[7] ¶ 17 The Legislature could have easily and clearly limited fees related to rental/lease, installation and/or taxes, but it did not do so.[20] We decline to do so.[21] To do so,

individual legislators or others as to happenings in the Legislature is incompetent, since that body speaks solely through its concerted action as shown by its vote. *Davis v. Childers*, 181 Okl. 468, 74 P.2d 930 (1938)"]; See, *Allen v. State*, 1988 OK 99, ¶ 11, 769 P.2d 1302 [Bills that fail, much like the testimony of individual lawmakers, are never probative of legislative intent. A legislature's failure to express its will through enacted law constitutes its official silence.].

**11.** *Jones v. State ex rel. Office of Juvenile Affairs*, 2011 OK 105, ¶ 15, 268 P.3d 72; *King v. King*, 2005 OK 4, ¶ 22, 107 P.3d 570; *Haggard v. Haggard*, 1998 OK 124, ¶ 1, 975 P.2d 439.

**12.** *Jones v. State ex rel. Office of Juvenile Affairs*, see note 11, supra; *Clifton v. Clifton*, 1990 OK 88, ¶ 7, 801 P.2d 693; *Maule v. Indep. Sch. Dist. No. 9 of Tulsa Cnty*, 1985 OK 110, ¶ 11, 714 P.2d 198.

**13.** *Jones v. State ex rel. Office of Juvenile Affairs*, see note 11, supra; *King v. King*, see note 11, supra,; *Fuller v. Odom*, 1987 OK 64, ¶ 4, 741 P.2d 449.

**14.** *Jones v. State ex rel. Office of Juvenile Affairs*, see note 11, supra; *King v. King*, see note 13, 1 supra; *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City*, 1995 OK 62, ¶ 5, 901 P.2d

800 *cert. denied*, 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995).

**15.** *Jones v. State ex rel. Office of Juvenile Affairs*, see note 11, supra; *King v. King*, see note 11, supra; *State ex rel. Dept. of Human Serv. v. Colclazier*, 1997 OK 134, ¶ 9, 950 P.2d 824.

**16.** Title 20 O.S. § 2011 1 provides:

Words used in any statute are to be understood in their ordinary sense, except when a contrary intention plainly appears, and except also that the words hereinafter explained are to be understood as thus explained. *Smith v. City of Stillwater*, 2014 OK 42, ¶ 30, 328 P.3d 1192; *State ex rel. Cartwright v. Georgia-Pacific Corp.*, 1982 OK 148, ¶ 20, 663 P.2d 718; *Riffe Petroleum Co. v. Great Nat. Corp., Inc.*, 1980 OK 112, ¶ 7, fn. 12, 614 P.2d 576.

**17.** Title 47 O.S. Supp. 2013 § 6–212.3, see note 2 supra.

**18.** Title 47 O.S. Supp. 2013 § 6–212.3, see note 2, supra.

**19.** Merriam–Webster Dictionary (2015).

**20.** We are not concerned that such fees will be allowed to be unlimited either. In addition to

would render the Legislature's use of the word "maintenance" meaningless, irrelevant and superfluous.[22] Rather, we give effect to the clear meaning of the statute's unambiguous language.[23] The $25.00 maintenance fee cap set forth in 47 O.S. Supp. 2013 § 6–212.3 does not preclude the collection of other fees such as rental fees, taxes, or insurance/damage waiver fees.[24]

## CONCLUSION

¶ 18 Only where the Legislative intent cannot be ascertained from the statutory language, i.e. in cases of ambiguity or conflict, are rules of statutory construction employed.[25] Statutes are interpreted to attain that purpose,[26] championing the broad public policy purposes underlying them.[27] In the absence of a contrary definition used in a legislative act, we must assume that the lawmaking authority intended for them to have the same meaning as that attributed to them in ordinary and usual parlance.[28]

¶ 19 Requiring installment of an interlock device is an attempt to curtail the behavior of convicted drunk drivers who continue to put themselves and others at risk. The ordinary definition of "maintenance" means the upkeep of property or equipment or to keep in good condition by making repairs, correcting problems, etc. which is distinguished from commonly used terms like sale, rental, lease, installation, and even taxes. The Legislature could have, but did not limit fees related to rental/lease, installation and/or taxes, nor is it our place to do so. Accordingly, we hold that the $25.00 maintenance fee cap set forth in 47 O.S. Supp. 2013 § 6–212.3 does not preclude the collection of other fees such as rental fees, taxes, or insurance/damage waiver fees.

REIF, C.J, COMBS, V.C.J., KAUGER, WINCHESTER, EDMONDSON, TAYLOR, COLBERT, GURICH, JJ., concur.

WATT, J., not voting.

the competitive marketplace, as the Attorney General points out, interlock device providers cannot charge for goods or services not actually rendered, engage in unfair or anticompetitive practices by colluding to raise the price beyond what the free market allows. Such practices are prohibited by antitrust and consumer protection laws. See generally, 79 O.S. 2011 Ch.4 §§ 201 *et. seq*; 15 O.S. 2011 §§ 751 *et seq.*

**21.** *Keating v. Edmondson*, see note 9, supra [The Court does not read exceptions into a statutory provision not made by the Legislature. *Chamberlain v. American Airlines*, 1987 OK 62, ¶ 15, 740 P.2d 717; *City of Bethany v. District Court of Oklahoma County*, 1948 OK 38, ¶ 16, 200 Okla. 49, 191 P.2d 187; *City of Bristow v. Groom*, 1944 OK 223, ¶ 11, 194 Okla. 384, 151 P.2d 936.].

**22.** *Estes v. ConocoPhillips Co.*, 2008 OK 21, ¶ 16, 184 P.3d 518.

**23.** *Keating v. Edmondson*, see note 9, supra; *Wiseman v. Boren*, 1976 OK 2, ¶ 10, 545 P.2d 753; *Shaw v. Grumbine*, 1929 OK 116, ¶ 0, 137 Okla. 95, 278 P. 311.

**24.** The Oklahoma Attorney General argues that Heath's interpretation of the statute is economically infeasible, making it a nullity. According to the Attorney General, purchasing a interlock device usually costs around $1000.00, which does not include the price for installation, maintenance and other services., http://www.drinkinganddriving.org/Artilces/personal-tech.html. Leasing such devices may be the only affordable option for some people. Furthermore, also according to the Attorney General, the average cost to lease such a device is $80.00 a month with additional monitoring fees. National Highway Traffic Safety Administration, *Case Studies of Ignition Interlock Programs*, 31 (April 2012), http://www.nhtsa.gov/staticfiles/nti/dpf/811594.pdf.

**25.** *Jones v. State ex rel. Office of Juvenile Affairs*, see note 11, supra; *King v. King*, see note 11, supra; *Haggard v. Haggard*, see note 11, supra.

**26.** *Jones v. State ex rel. Office of Juvenile Affairs*, see note 11, supra; *King v. King*, see note 11, supra; *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City*, see note 14, supra.

**27.** *Jones v. State ex rel. Office of Juvenile Affairs*, see note 11, supra; *King v. King*, see note 11, supra; *State ex rel. Dept. of Human Serv. v. Colclazier*, see note 15, supra.

**28.** Title 20 O.S. 2011 § 1, see note 16, supra. *Smith v. City of Stillwater*, see note 16, supra; *State ex rel. Cartwright v. Georgia–Pacific Corp.*, see note 16, supra; *Riffe Petroleum Co. v. Great Nat. Corp., Inc.*, see note 16, supra.